**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KAYLA JOHNSON, ) | |
| 1202 E 76th St ) | |
| Kansas City, MO 64131 ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. BANCORP, ) | |
| Serve Registered Agent: ) | |
| The Corporation Company, Inc. ) | |
| 112 SW 7th St., Suite 3C ) | |
| Topeka, KS 66603 ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

COMES NOW Plaintiff Kayla Johnson ("Plaintiff") by and through her counsel, for her Complaint against Defendant U.S. Bancorp ("US Bank") hereby states and alleges as follows:

**The Plaintiff**

1. Plaintiff resides in Jackson County, Missouri.

2. Plaintiff was hired by Defendant US Bank on or about August 25, 2018 as a pay desk associate.

3. Plaintiff worked full time for Defendant US Bank from August 25, 2018 until she was terminated on October 1, 2020 for unlawful and discriminatory reasons.

4. Plaintiff is a minority (African American) female.

5. From approximately January 1 of 2019 through the date that she was unlawfully terminated by Defendant US Bank, Plaintiff was subjected to harassment, hostile work

1

environment, discrimination and retaliation on the basis of her race, disability, pregnancy, and use of FMLA leave by Defendant US Bank and its employees.

6. Plaintiff was harassed, intimidated, and retaliated against by Defendant US Bank for utilizing her FMLA leave. Shortly after Plaintiff's FMLA leave was renewed she was terminated by Defendant US Bank.

7. Additionally, Plaintiff was unfairly scrutinized by Defendant US Bank as compared to similarly situated employees of different races and without disability requiring FMLA leave.

8. Caucasian Pay desk associates hired after Plaintiff received higher bonus compensation from Defendant US Bank.

9. Caucasian pay desk associates hired after Plaintiff were retained as employees of Defendant US Bank after Plaintiff was terminated for alleged "down-sizing."

10. Plaintiff complained to Defendant US Bank regarding harassment and hostile work environment that she faced because of her race, disability, and pregnancy but her complaints were not properly investigated by Defendant US Bank.

**The Defendant**

11. Defendant U.S. Bank is a Delaware corporation headquartered in Minneapolis, Minnesota with a location at 12800 Foster Street Overland Park, KS 66213.

12. Defendant U.S. Bank employed at least fifty (50) persons for at least twenty (20) weeks in the year preceding Plaintiff's termination and all times during Plaintiff's employment with Defendant U.S. Bank.

13. At all times relevant to this Complaint, Defendant U.S. Bank was Plaintiff's employer.

2

14. Defendant U.S. Bank is an employer within the meaning of 42 U.S.C.A § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §12112 ("ADA"), 42 U.S.C.A § 12101 (ADAAA) the Kansas Act Against Discrimination Title K.S.A. 44-1009 ("KAAD"), and 29 U.S.C.A. §2615 (a) (2) ("FMLA Retaliation").

15. Defendant U.S. Bank failed and refused to properly train its managers, supervisors, and employees regarding civil rights laws.

16. Defendant U.S. Bank failed and refused to conduct any proper investigation into Plaintiff's complaints and failed and/or refused to stop illegal behavior.

17. Defendant U.S. Bank is liable for the discriminatory, harassing, hostile actions and retaliatory actions by its employees against Plaintiff.

## Jurisdiction and Venue

18. This lawsuit is brought under Section 1981, Title VII, ADA, ADAAA, and FMLA, for the discriminatory, harassing, retaliatory, and hostile behavior of Defendant US Bank and its employees. This lawsuit is also brought to address Defendant US Bank's failure to investigate, address, and eliminate the illegal harassing, discriminatory, retaliatory, and hostile work environment against Plaintiff.

19. Original jurisdiction lies herein pursuant to the statutes listed in paragraph 18 above. Additionally, jurisdiction is proper pursuant to 28 U.S.C.A. §1331. Further there is complete diversity in this case and the amount in controversy exceeds $75,000 making jurisdiction also proper pursuant to 28 U.S.C.A. §1332.

20. Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and (c) as Defendant U.S. Bank does business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

4839-4176-3800, v. 11

21. All conditions precedent to jurisdiction have occurred and/or been complied with.

22. Plaintiff filed her initial Charge of Discrimination in a timely manner on or about October 15, 2020 alleging that between July 1, 2019 and October 1, 2020 she was discriminated against based on race, color, disability, and retaliation with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"). The matter was assigned EEOC Charge Number 563-2021-00011. A copy of the Charge is attached hereto as Exhibit A.

23. The EEOC issued Plaintiff her Right to Sue letter dated October 27, 2020 from the EEOC and this lawsuit is filed within ninety (90) days of the date on the EEOC letter. A copy of the Right to Sue letter is attached hereto as Exhibit B.

## General Allegations

24. Plaintiff began working for Defendant U.S. Bank on August 25, 2018 as a pay desk associate.

25. After Plaintiff completed her training process, Tonya Williams (Ms. Williams), a white female, and Plaintiff's supervisor, told Plaintiff, "I'm surprised you're still here; I didn't think you were gonna make it sister girl".

26. Plaintiff was given permission to leave work 15 to 30 minutes early because she attended school at night.

27. Ms. Williams would make rude comments about Plaintiff leaving early and attempt to give her last minute assignments causing her to leave work late.

28. Plaintiff and other employees could read at their desks if they were not answering phone calls from customers, however Ms. Williams would not allow Plaintiff to read her textbooks at her desk.

29. After Plaintiff completed her initial training, she would still have questions regarding her position. Plaintiff would attempt to communicate her questions to Ms. Williams via phone or Skype, but Ms. Williams would ignore her correspondence. Further, when Plaintiff attempted to contact Ms. Williams via Skype to Ms. Williams would change her status to unavailable.

30. Ms. Williams would ignore requests for assistance from black staff but promptly respond to requests from white staff.

31. Plaintiff attended a potluck hosted by her supervisor and was told she should have made some fried chicken for all the employees. Defendant did not tell white employees that they should make fried chicken for the potluck.

32. Plaintiff complained to Defendant that Ms. Williams was discriminating her against her, but Defendant ignored Plaintiff's complaints.

33. Defendant told Plaintiff that Ms. Williams could not discriminate against her because her husband was black. Also, Plaintiff's supervisor told her that they could not afford to lose Ms. Williams so they would have to figure it out or Plaintiff could leave.

34. In May of 2019 Plaintiff was diagnosed with anxiety and depression.

35. Plaintiff informed Defendant of her diagnosis and that the stress of her job was contributing to her health issues.

36. Defendant ignored Plaintiff's plea for help and continued to direct her to work in an hostile environment.

37. On July 24, 2019 Plaintiff was at work. She received a Skype message from Ms. Williams stating "I wish Kayla would quit and leave".

38. Shortly after receiving the above Skype message Plaintiff asked to speak with a different supervisor, Timothy Springfield, regarding the Skype message Plaintiff had received from Ms. Williams.

39. As Plaintiff's supervisor was walking to Plaintiff's area, Ms. Williams made threatening comments to Plaintiff.

40. As a result, Plaintiff was too afraid to stay at her desk, she went to her car to contact Defendant's human resources department.

41. Plaintiff informed Defendant's human resources department of the Skpe message received and that Ms. Williams has been discriminating against her based on her race.

42. Defendant told Plaintiff to go back to work and speak with her manager.

43. Before Plaintiff arrived back to work, her manager told her that she if did not come back she would be accused of job abandonment.

44. Plaintiff was required to work the remainder of the day with Ms. Williams. The Defendant did not take any action to resolve the situation on that day.

45. On July 25 and July 26, Plaintiff met with her supervisors and Ms. Williams. Plaintiff complained to Defendant that Ms. Williams was discriminating against because of her race. The Defendant told Plaintiff that she was wrong. The Defendant did not investigate Plaintiff's complaints.

46. The result of the meetings was that Plaintiff would remain under Ms. Williams's supervision, but she could direct her questions to another supervisor.

47. The supervisor that Plaintiff was directed to send her questions to, sent her a message stating, "sticks and stones… they break bones… don't dumb old words can't kill us, but they do hurt."

48. These actions by Ms. Williams and Defendants caused Plaintiff to be feel isolated and triggered her anxiety and depression.

49. In August of 2019, Plaintiff was approved for intermittent FMLA leave. Her intermittent leave allowed her to be away from work for three days per months.

50. Notice of this intermittent FMLA leave was provided to Defendant US Bank.

51. November 2019, Plaintiff was granted FMLA leave from November 21, 2019 to January 24, 2020. When Plaintiff returned to work, her supervised stated "where had she been, and he hoped she enjoyed her vacation.

52. When Plaintiff would take her intermittent FMLA leave she was asked by her managers and supervisors if she really needed to take the time.

53. Plaintiff's managers and supervisors would tell Plaintiff that they would need to let other employees know that they would be short staffed as a result of Plaintiff taking her intermittent FMLA leave.

54. Plaintiff was told by her managers/supervisors that she would not be given reports to complete as she could not be counted on to work every day.

55. Because Plaintiff did not receive reports to complete, she would miss the opportunity to earn merit-based bonuses.

56. During personal calls and group calls, Plaintiff's supervisors would state that they work when they do not feel well, you can work when you are sick, you are already at home so why do you need to take leave.

57. In March of 2019, Plaintiff did not receive her merit-based bonus. She was informed that she did not receive her bonus because her employment began mid-year, and they

could not evaluate her work. This same explanation was provided to another black employee that did not receive her merit-based bonus.

58. March 2020, two white employees that started mid-year received their merit-based bonuses and one employee received a raise.

59. On September 1, 2020 Defendant's FMLA was recertified giving her approved intermittent FMLA from August 27, 2020 to August 25, 2021. The recertification allowed for her to miss seven days from work per month.

60. On September 2, 2020 Plaintiff informed her supervisor that she was pregnant and that she been taking time off in the morning due to morning sickness. In response, her supervisor said "congratulations, when are you due and when will you take your maternity leave.

61. On September 9, 2020 Plaintiff informed Defendant U.S. Bank that she suffered a miscarriage.

62. Plaintiff utilized bereavement leave and FMLA leave from September 10 to September 20, 2020.

63. While Plaintiff was taking FMLA leave her supervisor would contact her to tell her that he really needed her at work, the team was short and he would ask her work part of the day.

64. August to October 2020, Defendant's employees told Plaintiff that they can't count on her to come to work and that they would love to have employees that came to work every day.

65. On October 1, 2020 during Plaintiff's huddle meeting her supervisor told her and other employees that they needed everyone at work every day.

66. On October 1, 2020, Defendant was told by Defendant U.S. Bank that her department was "downsizing". Defendant was the only employee laid off.

67. Defendant US Bank told Plaintiff's co-workers that she was laid off.

68. In August of 2020, Defendant US Bank hired two Caucasian employees.

69. Defendant was not downsizing. Plaintiff's termination was discriminatory and retaliatory.

70. Plaintiff would receive monthly performance reviews which were always positive.

### COUNT I
### RACE DISCRIMINATION, HARRASMENT AND RETALIATION IN VIOLATION OF TITLE VII & SECTION 1981

71. Ms. Johnson incorporates by reference every allegation made herein.

72. Ms. Johnson is African American.

73. Ms. Johnson was treated differently because of race.

74. Ms. Johnson complained to Defendant that she was being harassment and discriminated against because of her race.

75. The Defendant failed to investigate Ms. Johnson's complaints of discrimination.

76. The conduct alleged herein adversely affected the terms and conditions and privileges of Ms. Johnson's employment.

77. As a direct and proximate cause of the actions and conduct set forth herein, Ms. Johnson suffers and will continue to suffer damages, emotional distress and inconvenience.

78. Ms. Johnson engaged in protected activity under Title VII and 1981, including but limited to opposing discriminatory conduct by the Defendant.

79. Ms. Jones suffered adverse employment actions such as but not limited to being isolated, bullied, harassed, ignored, and denied opportunities by the Defendant.

80. There is a causal connection between Ms. Johnson's protected activity and the adverse employment actions.

4839-4176-3800, v. 11

WHEREFORE, Ms. Johnson prays for judgment against Defendant on count I of her complaint, for a finding that she has been subjected to unlawful race discrimination, harassment and retaliation in violation Title VII of the Civil Rights Act of 1964 and Section 1981; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT II
## DISABILITY DISCRIMINATION AND HARRASMENT
## IN VIOLATION OF THE ADA AND ADAAA

81. Ms. Johnson incorporates by reference every allegation made herein.

82. The acts above constitute disability discrimination and harassment in violation of ADA and ADAAA.

83. At all times relevant to the complaint, Ms. Johnson suffered from depression, anxiety, and other mental health issues that substantially limits at least one major life activity this rendering her disabled within the meaning of the ADA and ADAAA.

84. Ms. Johnson was a qualified individual with a disability as defined by the ADA and ADAAA.

85. Ms. Johnsons could successfully perform the duties of her job with or without a reasonable accommodation.

86. Plaintiff was harassed, accused of being incompetent, isolated, and terminated because of her disability.

87. Defendant's harassment of Ms. Johnson because of her disability was intentional and was done with malice and/or a reckless indifference to the protected rights of Ms. Johnson.

WHEREFORE, Ms. Johnson prays for judgment against Defendant on count II of her complaint, for a finding that she has been subjected to unlawful disability discrimination and harassment in violation of the ADA and ADAAA; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT III
## RETALIATION IN VIOLATION OF THE FMLA

88. Ms. Johnson incorporates by reference every allegation made herein.

89. Prior to requesting intermittent medical leave under the FMLA, Ms. Johnson was performing her duties to the reasonable expectations of Defendant.

90. Ms. Johnson engaged in conduct protected under the FMLA by requesting intermittent FMLA leave.

91. Defendant's employees harassed, ridiculed and denied Ms. Johnson the certain opportunities because she requested and utilized FMLA leave.

92. Defendant's employees questioned if Ms. Johnson needed to utilize leave, demanded that she return from leave and threatened to tell her co-workers that they were short staffed because she was on FMLA leave.

93. Ms. Johnson's request for FMLA and use of FMLA was a motivating factor in Defendant's decisions to deny her opportunity to work reports, earn merit-based income and terminate her employment.

11
4839-4176-3800, v. 11

WHEREFORE, Ms. Johnson prays for judgment against Defendant on count III of her complaint, for a finding that she has been subjected to unlawful retaliation in violation of the FMLA; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully submitted,

WYRSCH HOBBS MIRAKIAN, P.C.

By: */s/ Sheena A. Foye*
Sheena A. Foye                KS #24907
1200 Main Street, Suite 2110
Kansas City, MO 64105
816-221-0080
Fax: 816-221-3280
sfoye@whmlaw.net
ATTORNEYS FOR PLAINTIFF